STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 22-3-15 Vtec |
| Gingras Act 250 Amended Permit<br>Application (Application #6F0501-1) | DECISION ON MOTION |

**Decision on Motion for Party Status**

Michael Gingras ("Mr. Gingras") seeks an Act 250 Land Use Permit to subdivide his 9.92 acre tract of land ("Project") at 172 Lakewood Drive in the Town of Swanton, Vermont ("Property"). The District # 6 Environmental Commission ("the District Commission") deemed the project a minor application and modification of Mr. Gingras's existing Act 250 Permit # 6F0501 ("the Permit"). Edward Baker ("Mr. Baker"), Mr. Gingras' neighbor, attended the Commission's hearing on July 18, 2014, at which he was granted preliminary party status under Criteria 5 (traffic) and 8 (aesthetics), but denied party status under criteria 1(B) (wastewater disposal) and 9B (prime agricultural soils). The Commission later approved the Project and issued Permit # 6F0501-1 ("Dash-1 Permit") on February 19, 2015. Mr. Baker timely appealed that decision and filed a Statement of Questions containing 13 Questions. He also appeals the denial of his party status as to certain Criteria and has moved, pursuant to Vermont Rule for Environmental Court Proceedings (V.R.E.C.P.) 5(d)(2), for party status in this appeal under Criteria 1(B) and 9(B).[1] Mr. Gingras opposes granting Mr. Baker party status under those two Criteria. The Vermont Natural Resources Board ("NRB") has filed a legal memorandum in support of Mr. Baker's motion for party status.

Mr. Baker is represented by attorney Joseph F. Obuchowski, Mr. Gingras is represented by attorney Nicole A. Killoran, and the NRB is represented by attorney Peter J. Gill.

---

[1] At the conclusion of their proceedings, the District Commission granted Mr. Baker final party status under Act 250 criteria 5 and 8, but denied his request for party status under criteria 1(B) and 9(B).

**Factual Background**

For the sole purpose of putting the pending motions into context the Court recites the following facts:

1.      Mr. Gingras owns approximately 9.91 ± acres of land located on at 172 Lakewood Drive in the Town of Swanton, Vermont ("the Property").

2.      The Property is subject to Act 250 Permit # 6F0501 ("the Permit"), which authorized the construction of a 60-foot by 125-foot commercial bait processing facility, known as Hog Island Wholesale Bait.

3.      Mr. Baker lives on approximately 10.1 ± acres of land located at 155 Lakewood Drive, which shares a common boundary of approximately 877 feet along Mr. Gingras' northern boundary.

4.      Mr. Baker's property includes pastureland used for farming activities, including the boarding, raising, feeding, and/or management of four or more horses.

5.      In 1994, a ditch running along a portion of the Property's northern boundary shared with Mr. Baker drained excess groundwater and/or wastewater running off Mr. Gingras' Property towards Mr. Baker's property, directing the runoff towards Lake Champlain.

6.      The parties dispute whether this ditch prevented the overflow of water from the Property onto Mr. Baker's land.

7.      In 2002, Mr. Baker constructed a berm to prevent overflow from the ditch from running off onto his property.

8.      Both parties contend that since Mr. Baker constructed the berm, water has continued to back up on both properties, saturating both properties and causing flooding.

9.      Mr. Baker states that the saturation and flooding of his property has resulted in the degradation of his pasture and farm land, thereby limiting the number of horses he can board and creating conditions posing potentially serious harmful effects on the health of his horses.

10.     On May 5, 2014, Mr. Gingras filed an application to subdivide the Property into 3 lots: a wastewater disposal system will be installed on Lot 1; the existing commercial bait operation buildings will be expanded with the construction of a 4,100 square-foot addition on Lot 2; and a single family residence will be constructed on Lot 3 (the "Project").

2

11. The Project will use 715 gallons per day of water. Existing water demand for the bait shop is 225 gallons per day and the proposed single family residence will require 490 gallons per day.

12. Septic waste generated by the existing bait operation, the 4,100 square-foot addition, and the residential and commercial uses located at 176 Lakewood Drive will be served by the existing shared mound system approved in Potable Water Supply and Wastewater System Permits WW-6-0345 and WW-6-0345-1.

13. Septic waste generated by the single family residence proposed for Lot 3 will be served by a new mound system approved in Permit WW-6-0345-2.

14. Overflow water from the minnow holding tanks located inside the existing bait building will drain to a 100,000 gallon settling pond via a trench floor drain registered with the Drinking Water and Groundwater Protection Division and authorized under the Underground Injection Control Program.

15. Water in the settling pond will then drain to a 1,000 gallon pump station with an automated filtration unit. The filters on that unit will be regularly cleaned when the unit is back-flushed; the resulting back-flushed water will be directed back to the settling pond.

16. Water will be pumped from the pump station to a proposed subsurface drip dispersal system, an approved technology in Section 923 of the Wastewater System and Potable Water Supply Rules.

17. The drip system will filter and disperse 8,000 gallons of water per day.

18. The area for the drip dispersal system runs generally away from Mr. Baker's property and towards either Lake Champlain or a ditch along the rear of Mr. Gingras' Property.

19. A swale will be constructed along the northern edge of the drip dispersal system bordering Mr. Baker's property to allow positive drainage towards the Lake or the ditch in the event the buried drip line becomes damaged.

20. Stormwater runoff from the buildings, rooftops, access drives, and parking areas will be treated in grass line swales with check dams to a culvert under Lakewood Drive which then discharges into Lake Champlain.

3

21. The drip dispersal system and the new wastewater system permitted for Lot 1 both overshadow a portion of Mr. Baker's property.

22. The District # 6 Environmental Commission ("the District Commission") deemed Mr. Gingras' application to be a minor application and noticed a hearing to be held on July 18, 2014. Mr. Baker attended this hearing and was granted preliminary party status under Criteria 5 and Criteria 8, but was denied party status under Criteria 1(B) and Criteria 9(B).

23. Mr. Baker now moves for party status under Criteria 1(B) and 9(B).

24. On November 5, 2014 the Commission approved the Project and issued Permit # 6F0501-1, which was subsequently altered and amended before being re-issued on February 19, 2015 ("Dash-1 Permit").

25. Mr. Baker timely appealed the Commission's decision and moved for party status under Criteria 1(B) and 9(B).

**Analysis**

Mr. Baker asserts that he is entitled to party status under Act 250 Criteria 1(B) and 9(B); in his opposition, Mr. Gingras contends that this Court should not grant Mr. Baker party status because Mr. Baker cannot meet the substantive standards necessary to claim party status under Criteria 1(B) and 9(B).

Mr. Baker seeks party status under 10 V.S.A. § 6085(c)(1)(E), under which "[a]ny adjoining property owner or other person who has a particularized interest protected by [Act 250] that may be affected by an act or decision by a District Commission" is entitled to party status. Although an interest is particularized if it is specific to the appellant rather than a general policy concern shared with the public, an interest may still be particularized even if it is shared with multiple members of the general public so long as it is specific to the party and not merely an interest in "the common rights of all persons." In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.); Re: McLean Enters. Corp., No. 2S1147-1-EB, Mem. of Decision at 7 (Vt. Envtl. Bd. Sept. 19, 2003).

Mr. Baker must also show that the interest is protected by the Act 250 criteria for which he is seeking party status and that this interest may be affected by the Commission's issuance of the land use permit currently under appeal. In re Granville Mfg. Co., No. 2-1-11 Vtec, slip op.

4

at 6 (Vt. Super. Ct. Envtl. Div. July 1, 2011) (Durkin, J.). To demonstrate that this particularized interest may be affected by an act or decision by a district commission, an appellant must allege some causal relation between the proposed development and her interest. In re Bennington Wal-Mart Demolition/Constr. Permit, No. 158-10-11 Vtec, slip op. at 9–10 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.). This requires a showing of a reasonable possibility, beyond mere speculation and theory, that the Commission's decision may affect the particularized interest. Id.; Pion, No. 245-12-09 Vtec at 7. We review Mr. Baker's party status requests in light of these legal standards.

I.      **Criterion 1(B)**

Criterion 1(B) provides, in relevant part, that "a permit will be granted whenever . . . the development or subdivision will meet any applicable health and environmental conservation department regulations regarding the disposal of wastes, and will not involve the injection of waste materials or any harmful or toxic substances into ground water or wells." 10 V.S.A. § 6086(a)(1)(B). Mr. Baker raises concerns about the disposal of waste overflow water through the proposed subsurface drip dispersal system and the underground flow of such water to his property.

Specifically, Mr. Baker alleges that the drip dispersal system will exacerbate an existing condition regarding the saturation of his property and may affect his horses' health. This is not a general policy concern shared with the general public; rather, it is particular to Mr. Baker as it affects the flooding and saturation of his property.

Further, this interest is protected by Criterion 1(B) because it involves the injection of waste materials into the groundwater.

Finally, Mr. Baker's interest may be affected by the Commission's issuance of the land use permit currently under appeal. Mr. Baker has demonstrated that the disposal of wastewater on Mr. Gingras' Property may already be causing impacts on his interests; such a showing meets the threshold requirement to establish a reasonable possibility that a decision on Criterion 1(B) could affect his particularized interest. See In re Barefoot & Zweig Act 250 Application, No. 46-4-12 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Mar. 3, 2013) (Durkin, J.) (concluding that appellant's allegations that stormwater and sediment from a neighboring

5

project could degrade the stream due to its location and that applicant's use of the site had already caused erosion on appellant's property the threshold requirement to establish a reasonable possibility of impacts was met). While we recognize that the wastewater permit obtained by Mr. Gingras creates a rebuttable presumption of compliance with Criterion 1(B), this does not eliminate Mr. Baker's valid interest under that Criterion or affect his party status.

The Court concludes that Mr. Baker has demonstrated not only a particularized interest protected by Criterion 1(B), but also a reasonable possibility that this interest may be affected by a decision on the Project. For this reason, we **GRANT** Mr. Baker's motion for party status under Criterion 1(B).

## II.    <u>Criterion 9(B)</u>

Criterion 9(B) addresses primary agricultural soils and requires an applicant to demonstrate that "the subdivision or development will not result in any reduction in the agricultural potential of the primary agricultural soils . . . ." 10 V.S.A. § 6086(a)(9)(B). Mr. Baker raises concerns that the drip dispersal system will compound harm to his pastureland that is currently saturated as the result of wastewater flowing from Mr. Gingras' Property onto his fields. He contends that the Project will further limit his ability to raise horses on his property. This interest is particularized, rather than a general policy concern, in that it affects his ability to raise horses on his own property.

Further, Mr. Baker's interest is protected under Criterion 9(B)(i), which looks at "the continuation of or potential for agriculture or forestry on adjoining lands . . . ." 10 V.S.A. § 6086(a)(9)(B)(i); see also In re Morgan Meadows/Black Dog Realty, No. 267-12-07 Vtec, slip op. at 6 (Vt. Envtl. Ct. Dec. 1, 2008) (Wright, J.). Although "agriculture" is not defined under 10 V.S.A. Chapter 151, "farming" is defined as "the raising, feeding, or management of four or more equines owned or boarded by the farmer, including training, showing, and providing instruction and lessons in riding, training, and the management of equines." 10 V.S.A. § 6001(22)(G). Here, Mr. Baker has alleged that he is unable to board any more than four horses on his property because of the wet pastureland, which is caused, at least in part, by overflow from Mr. Gingras' Property. By declaring an interest in the viability of agricultural

6

operations on his adjoining property, Mr. Baker has made a sufficient showing of a "protectable" interest under criterion 9(B). See <u>Morgan Meadows</u>, No. 267-12-07 Vtec at 7–9.

Finally, Mr. Baker has demonstrated that there is a reasonable possibility that his interest may be affected by a decision on the proposed Project. He asserts that development on the project site has already and will continue to reduce the amount of his own pastureland available for agriculture, particularly for raising horses. He discusses how the loss of suitable pastureland poses significant threats to the animals' health, offering proof in the form of a signed statement from a veterinarian. Mr. Baker has made a showing that the proposed development, which includes a drip dispersal system, may exacerbate existing saturation of his pasturelands by introducing 8,000 gallons per day of wastewater that will be injected into the ground, which may, as a result, significantly interfere with or jeopardize the continuation of raising horses on his property. Mr. Baker relies on both personal knowledge and an expert's advice rather than speculation, all of which taken together is sufficient to demonstrate a causal connection between the proposed project and the alleged adverse impacts upon his interests. Cf. <u>In re RCC Atlantic, Inc.</u>, No. 163-7-08 Vtec, slip op. at 8–9 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.) (concluding that the prospective appellants had failed to provide a sufficient offer of proof in the context of requesting party status because they neglected to reference any specific evidence in the form of credible documentation or an affidavit describing a factual basis for their concerns).

The Court concludes that Mr. Baker has demonstrated not only a particularized interest protected by Criterion 9(B), but also a reasonable possibility that this interest may be affected by a decision on the Project. For this reason, we **GRANT** Mr. Baker's motion for party status under Criterion 9(B).

### Conclusion

For all of the reasons more fully discussed above, we conclude that, in regards to Act 250 Criteria 1(B) and 9(B), Mr. Baker has demonstrated that he is entitled to party status. We therefore **GRANT** his motion for party status under Act 250 criteria 1(B) and 9(B).

7

Electronically signed on August 21, 2015 Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division